UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Jill R. C., | Case No. 2:22-cv-01663-DJA |
| Plaintiff, | |
| v. | **Order** |
| Martin O'Malley[1], Commissioner of Social Security, | |
| Defendant. | |

Before the Court is Plaintiff Jill R. C.'s motion for reversal and/or remand (ECF No. 19) and the Commissioner's countermotion to affirm (ECF No. 24). Plaintiff filed a reply. (ECF No. 26). Because the Court finds that the ALJ erred in not considering all of Plaintiff's mental limitations when developing the RFC, the Court grants Plaintiff's motion for reversal and/or remand in part (ECF No. 19) and denies the Commissioner's countermotion to affirm (ECF No. 24). The Court finds these matters properly resolved without a hearing. LR 78-1.

## **BACKGROUND**

**I.     Procedural history.**

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income on September 4, 2020. (ECF No. 19 at 3). Her applications were denied at the initial and reconsideration levels. (*Id.*). Plaintiff appeared before an administrative law judge ("ALJ") on January 6, 2022. (*Id.*). On May 6, 2022, the ALJ issued an unfavorable decision. (*Id.*). The Appeals Council denied review on August 4, 2022, making the ALJ's decision the final decision of the Commissioner. (*Id.*).

---

[1] Martin O'Malley is now the Commissioner of Social Security and substituted as a party.

**II.     The ALJ decision.**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. 404.1520(a) and 416.920(a). (AR 17). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 18, 2017. (AR 18). At step two, the ALJ found that Plaintiff has the following severe impairments: menorrhagia with iron deficiency; anemia; obesity; hip tendinosis; right shoulder tendinosis; degenerative disc disease of the lumbar and cervical spine; allergies; depression; anxiety; and post-traumatic stress disorder. (AR 19). At step three, the ALJ found that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20-23). In making this finding, the ALJ considered Listings 1.15, 1.18, 3.02, 12.04, 12.06, and 12.15. (AR 20-23).

At step four, the ALJ found that Plaintiff has an RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) subject to certain limitations, including that "[t]he claimant is able to understand, remember, and carry out tasks commensurate with semi-skilled work that could be learned and mastered in three to six months." (AR 24). At step five, the ALJ found Plaintiff incapable of performing any past relevant work but found that Plaintiff could perform occupations such as office helper, information clerk, furniture rental clerk, document preparer, telephone information clerk, and charge account clerk. (AR 33-34). Accordingly, the ALJ found that Plaintiff had not been disabled from June 18, 2017 through the date of decision. (AR 35).

**STANDARD**

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." *Id.* The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

## DISABILITY EVALUATION PROCESS

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R.

§ 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id*. § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not

meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSR 16-3p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42

# ANALYSIS AND FINDINGS.

## I. Whether the RFC sufficiently addresses Plaintiff's mental impairments.

### A. The parties' arguments.

Plaintiff argues that the ALJ erred by not including Plaintiff's mental limitations in the RFC. (ECF No. 19 at 3). Specifically, when conducting the psychiatric review technique, the ALJ found Plaintiff to have limitations in three of the four areas of mental functioning: (1) mild limitations in interacting with others; (2) mild limitations in concentrating, persisting, or maintaining pace; and (3) moderate limitations in adapting or managing oneself. (*Id.* at 5). But the ALJ's RFC simply stated that Plaintiff could "understand, remember, and carry out tasks commensurate with semi-skilled work that could be learned and mastered in three to six months." (*Id.* at 6). Plaintiff points out that the "semi-skilled" limitation does not address her mental limitations for two reasons. (*Id.* at 6-9). First, "semi-skilled is a not a functional limitation, but a vocational one, a fact specifically addressed in the training materials ALJs receive. (*Id.* at 6-7). Second, semi-skilled work requires close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending to or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. (*Id.* at 7-8) (citing 20 C.F.R. §§ 404.1568(b), 416.968(b)). But this is inconsistent with the ALJ's finding that Plaintiff has severe mental impairments, which finding means that her mental impairments interfere with her basic work related activities including understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. (*Id.*) (citing 20 C.F.R. §§ 404.1522(b), 416.922(b)). And even if semi-skilled work was consistent with a severe mental impairment, it would not address Plaintiff's limitations in concentrating, persisting, and maintaining pace; interacting with others; and adapting/managing herself. (*Id.* at

8). Ultimately, because the ALJ did not explain how the RFC addresses Plaintiff's mental limitations, Plaintiff argues that remand is appropriate.[2] (*Id*. at 8-9).

The Commissioner responds and argues that the semi-skilled limitation can adequately encompass Plaintiff's mental limitations. (ECF No. 24 at 5). But even if not, even if the ALJ erred, the Commissioner asserts that the error was harmless because the jobs the ALJ found that Plaintiff could perform were unskilled rather than semi-skilled. (*Id.* at 6). Specifically, because unskilled work is defined as "work which needs little to no judgment to do simple duties that can be learned on the job in a short period of time," unskilled work accommodates Plaintiff's mental limitations. (*Id.*). The Commissioner also points out that the ALJ only found Plaintiff moderately limited in one area of mental functioning. (*Id.* at 7). The ALJ found Plaintiff only mildly limited in the remaining two. (*Id.*). The Commissioner argues that mild limitations do not constitute "severe" impairments and thus, Plaintiff's ability to perform basic work activities was not as limited as she argues. (*Id.*). And in any event, the unskilled jobs that the ALJ cited would account for the limitations. (*Id.*).

Plaintiff replies that, while it is theoretically possible that an ALJ could explain why a restriction to "semi-skilled" work accommodates mild and moderate mental limitations, the ALJ provided no explanation here. (ECF No. 26 at 2). Without this explanation, Plaintiff points out that the "semi-skilled work that could be learned and mastered in three to six months" limitation does not accommodate any of Plaintiff's mental limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (*Id.* at 2-3). Plaintiff argues that the ALJ's failure to explain how the semi-skilled limitation accommodates these limitations means that the decision evades meaningful judicial review. (*Id.* at 3-4).

---

[2] Plaintiff includes a sentence in her conclusion requesting that "this Honorable Court reverse the Commissioner's decision and remand this matter for either payment of benefits, or further administrative proceedings…" (ECF No. 19 at 10). In response, the Commissioner argues that reversal and remand for benefits is inappropriate here and that Plaintiff did not fully develop her request for this relief. (ECF No. 24 at 8-10). In reply, Plaintiff clarifies that she agrees that remand for further proceedings—not reversal and remand for benefits—is the appropriate remedy here. (ECF No. 26 at 4).

Regarding the Commissioner's argument that the failure was harmless because the ALJ ultimately only adopted unskilled occupations, Plaintiff points out that the ALJ also failed to articulate any intention to accommodate Plaintiff's limitations by adopting these unskilled jobs. (*Id.* at 4). Without this explanation, Plaintiff argues that remand for further proceedings is appropriate. (*Id.*).

### B.     Analysis.

ALJs "follow a special technique at each level in the administrative review process" when evaluating the severity of mental impairments in order to evaluate the "functional consequences of the mental disorder(s) relevant to [the claimant's] ability to work[.]" 20 C.F.R. § 404.1520a(a). This is referred to as the psychiatric review technique and requires adjudicators to assess an individual's limitations and restrictions from a mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. *Bruce v. Kijakazi*, No. 3:23-cv-00145-CSD, 2024 WL 111804, at *4 (D. Nev. Jan. 9, 2024). The ALJ rates the degree of any mental functional limitation in four broad functional areas: (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. 20 C.F.R. § 404.1520a(c). The degree of limitation is rated using a five point scale: none, mild, moderate, marked and extreme. *Id*. If the impairment is rated "none" or "mild," then the ALJ "will generally conclude that [the] impairment[s] is not severe[.]" 20 C.F.R. § 404.1520a(d)(1). If the ALJ finds that there is a severe mental impairment, then the ALJ will assess the RFC. 20 C.F.R. § 404.1520a(d)(3).

However, the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment. *See Bruce*, 2024 WL 111804, at *5. Instead, they are used to rate the severity of mental impairments at steps two and three of the evaluation process. *See id.* (citing SSR 96-8P, 1996 WL 374184, at *4). Steps four and five "require[] a more detailed assessment" and ALJs are instructed to "itemize various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments." SSR 96-8P, 1996 WL 374184, at *4. That same SSR is clear, however, "[i]n assessing RFC, the

adjudicator must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" *Id.* at *5 (emphasis added).

"In this Circuit, when analyzing the issue of whether it was error for an ALJ to find a mild mental limitation but fail to craft a corresponding functional restriction for the RFC, district courts have come out differently depending on the facts of each case." *Sabrina M.C. v. Kijakazi*, No. EDCV 22-2187-KS, 2023 WL 8945707, at *5 (C.D. Cal. Nov. 20, 2023). Some courts in this circuit have found the Ninth Circuit's decision in *Woods v. Kijakazi* to resolve the issue because "[t]he Ninth Circuit found the ALJ's decision procedurally sufficient, even though the ALJ neither accommodated Woods' mild mental limitations in the RFC nor explained why accommodations were unnecessary." *Hilda V.A. v. Kijakazi*, No. 5:22-cv-01064-KES, 2023 WL 1107867, at *4 (C.D. Cal. Jan. 30, 2023) (citing *Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022)); *see Sanchez v. Comm'r of Soc. Sec. Admin.*, No. CV-21-01709-PHX-DLR, 2023 WL 6119631, at *2 (D. Ariz. Sept. 19, 2023). However, in making the *Woods* decision, the Ninth Circuit specifically noted that the particular facts of the case impacted the result. *See Woods*, 32 F.4th at 794. Specifically, "[t]he ALJ's assessment of [the claimant's] residual functional capacity expressly reflected [the] limitations" and the claimant ultimately did "not identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding her mental functioning." *Woods*, 32 F.4th at 794.

Courts are also split on whether it is error for an ALJ to address a moderate mental limitation by stating in the RFC that the claimant is limited to "simple" or "semi-skilled" work. *See Friesth v. Berryhill*, No. CV 16-3535-KES, 2017 WL 901882, at *6-7 (C.D. Cal. March 7, 2017) (finding harmful error); *see Bruce v. Kijakazi*, No. 3:23-cv-00145-CSD, 2024 WL 111804, at *6 (D. Nev. Jan. 9, 2024) (finding harmful error); *see Kuhn v. Commissioner*, No. 1:22-cv-00988-SAB, 2023 WL 3994989, at *8-9 (E.D. Cal. June 14, 2023) (finding no harmful error). *Friesth v. Berryhill* specifically addressed an RFC limiting a claimant to "semi-skilled" work. *Friesth*, 2017 WL 901882, at *1. There, the ALJ found that the claimant had severe impairments including anxiety and depression and assessed the claimant's RFC as including a limit to "no complex tasks or decision-making, and able to perform simple to semi-skilled work." *Id.* In

assessing the RFC, the ALJ found that the claimant had moderate difficulties in concentrating, persisting, and maintaining pace. *Id.* at *4. However, the Court found that the RFC's "simple and semi-skilled" limitation did not address Plaintiff's moderate difficulties in concentrating, persisting, and maintaining pace. *Id.* at *6. The Court also found that the error was not harmless because the vocational expert used that RFC to determine that Plaintiff could work as a retail salesclerk, cashier, ticket taker, or cafeteria attendant, jobs that require sustained concentration and a consistent work pace. *Id.* at *7. "Without the benefit of the VE's testimony on such matters, it is unclear to this Court whether moderate limitations on Plaintiff's ability to maintain concentration for extended periods or work at a consistent pace would render her ineligible to perform these jobs." *Id.*

Here, the Court finds that the ALJ erred by not considering the limitations and restrictions imposed by all of Plaintiff's impairments in assessing the RFC. In following the psychiatric review technique, the ALJ found Plaintiff: (1) moderately limited in adapting or managing herself; (2) mildly limited in interacting with others; (3) mildly limited in concentrating, persisting, or maintaining pace; and (4) not limited in understanding, remembering, or applying information. (AR 21-23). The ALJ also concluded that Plaintiff's depression, anxiety, and post-traumatic stress disorder were "severe." (AR 18-19). The ALJ stated then that the "residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (AR 28). However, the only mental limitation in the RFC is that Plaintiff "is able to understand, remember, and carry out tasks commensurate with semi-skilled work that could be learned and mastered in three to six months." (AR 24). The Court finds that the ALJ erred in not considering Plaintiff's moderate limitation in adapting or managing herself and erred in not considering Plaintiff's mild limitation in interacting with others. But the Court finds that the ALJ did not err in considering Plaintiff's mild limitation in concentrating, persisting, or maintaining pace. The Court finds that these errors are not harmless.

1. The ALJ's errors.

The ALJ erred by not reflecting Plaintiff's moderate limitation in adapting or managing herself and Plaintiff's mild limitation in interacting with others in the RFC or in the ALJ's

assessment of the RFC. Unlike the ALJ's assessment in *Wood v. Kijakazi*, which "expressly reflected the limitations" even though the ultimate RFC did not include them, here, neither the ALJ's assessment nor the RFC expressly reflected Plaintiff's limitations. Regarding Plaintiff's moderate limitation in adapting or managing herself, the ALJ wrote, "[i]n addressing claimant's moderate limitation in adapting or managing herself, the claimant is limited to understanding, remembering, and carrying out simple and detailed instructions commensurate with semi-skilled work." (AR 29). But understanding, remembering, and applying information was the area of mental functioning in which Plaintiff had no limitation. And the ALJ does not otherwise explain how a semi-skilled limitation would address Plaintiff's limitations in adapting and managing herself. Regarding Plaintiff's mild limitation in interacting with others, the ALJ did not consider this limitation at all in developing the RFC. The ALJ thus erred by not explaining how she considered these limitations in developing the RFC.

On the other hand, the ALJ sufficiently addressed Plaintiff's mild limitation in concentrating, persisting, or maintaining pace. Specifically, the ALJ noted that "[b]ased on the foregoing and the evidence of record…the claimant is able to perform work at the semi-skilled level *without being off task or absent more than tolerated for competitive work.*" (AR 30). While this analysis does not use the same exact language as the limitation, it "adequately captures restrictions related to concentration, persistence, or pace" because it is "consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. Aug. 22, 2008).

### 2. Harmlessness.

The ALJ's errors were not harmless. The Commissioner argues that, because the ALJ ultimately assessed that Plaintiff could perform unskilled—as opposed to semi-skilled—occupations, any error was harmless. The Commissioner points out that unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time" and require "little specific vocational preparation and judgment." (ECF No. 24 at 6); 20 C.F.R. § 404.1568(a); 20 C.F.R. § 416.968(a). However, while it is possible that Plaintiff could perform unskilled jobs with her limitations, the ALJ did not include this explanation in assessing unskilled

jobs for Plaintiff or in providing a hypothetical to the vocational expert. As a result, it is not clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (explaining the harmless error doctrine that the ALJ's decision need not be remanded or reversed if "it is *clear* from the record that the ALJ's error was inconsequential to the ultimate nondisability determination") (internal quotations omitted) (emphasis added).

The Court thus remands the case to the agency for further proceedings. On remand, the ALJ should assess the RFC, and articulate how the ALJ considers limitations and restrictions imposed by all of Plaintiff's mental impairments in developing the RFC. The Court denies the Commissioner's cross motion to affirm.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for reversal and/or remand (ECF No. 19) is **granted in part and denied in part.** It is granted in part regarding Plaintiff's request that this case be remanded for further proceedings and denied in all other respects.

**IT IS FURTHER ORDERED** that this case be **remanded** for further proceedings for the ALJ to assess the RFC and articulate how the ALJ considers limitations and restrictions imposed by all of Plaintiff's mental impairments in developing the RFC.

**IT IS FURTHER ORDERED** that the Commissioner's cross motion to affirm (ECF No. 24) is **denied.** The Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: January 25, 2024

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE